37 C.C.P.A. (Patents)

### Application of BEAN.
### Patent Appeal No. 5690.

United States Court of Customs and Patent Appeals.

Argued March 8, 1950.

Decided June 30, 1950.

Curtis, Morris & Safford, New York City (Truman S. Safford, New York City, and Richard K. Stevens, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

GARRETT, Chief Judge.

Appeal is here presented from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims numbered 6, 9, 10, and 12 of appellant's application for patent for alleged "new and useful improvements in Expansion Control of Molds and the Like," filed October 15, 1943. It appears that the application originally embraced other claims which the Primary Examiner rejected and that no appeal was taken from such rejection There are no allowed claims.

The appealed claims read as follows:

"6. The method of forming a plaster mold or core which includes forming a desired shape from a mixture comprising plaster of Paris, a small amount of an alkali metal silicate of the class consisting of sodium silicate and potassium silicate and water, setting the plaster, dehydrating the set plaster to convert calcium sulfate dihydrate to calcium sulfate hemi-hydrate and to leave free water distributed throughout the shape, thereafter rehydrating the hemi-hydrate to di-hydrate and then drying the shape to remove practically all of the remaining free water from the plaster."

"9. The method as in claim 6 in which the silicate is sodium silicate."

"10. The method as in claim 6 in which the silicate is potassium silicate."

"12. The method as in claim 6 in which about .8% by weight of sodium silicate is employed."

Two patents constitute the prior art references; namely, No. 2,220,703 issued to Morris Bean November 5, 1940, and No. 2,263,586 issued to Robert Neiman November 25, 1941. The claims were rejected as unpatentable over Neiman taken either alone or in view of the Morris Bean patent.

The process defined in the method claims of the Morris Bean patent is summarized in the statement of the examiner following the appeal to the board as follows:

"* * * In this process calcium sulfate hemi-hydrate (plaster of Paris) is mixed with water and formed into the desired mold shape and allowed to set, that is the mold is given sufficient time for the dehydrated calcium sulfate to combine with the water and form hydrated calcium sulfate $CaSO_4$ $2H_2O$ or gypsum. The gypsum having crystallized in the desired shape has a permanent set. The mold is then dehydrated in an autoclave to the hemi-hydrate but the liberated water is held in the autoclave so that it remains distributed throughout the mold. The mold is then allowed to rehydrate due to the free water in the mold and is then dryed to remove any

free water remaining in the mold in excess of that necessary for rehydration. The dehydration and subsequent rehydration is said to give the mold a greatly increased permeability over what it would otherwise have which permeability is an advantage in casting certain metals because it permits the gases developed by the heat of the metal including the water of hydration released by the gypsum to escape freely."

So far as the actual process steps are concerned, they appear to be the same in the application as in the Morris Bean patent, but, as we understand the application, the claim is that appellant has made improvements over the process of the Morris Bean patent in controlling expansion of the molds by adding to the dry plaster of Paris small amounts of either sodium silicate or potassium silicate in powdered form.

The specification of the application states *inter alia*:

"I have discovered as a result of considerable work and experimentation that sodium silicate or potassium silicate added in small amounts controls both the expansion due to initial setting of the plaster and that due to autoclave dehydrating and subsequent rehydrating steps of the Bean process and that these silicates otherwise successfully meet the requirements of a suitable expansion control agent as outlined.

"The sodium or potassium silicate in powdered form is added to and thoroughly mixed with the dry plaster of Paris and the other components of the dry plaster mix. A small amount of the control agent is all that is required. Very satisfactory results have been obtained with an addition of about 1% by weight of the sodium or potassium silicate. Best results have been obtained with the addition of .8% by weight of the least alkaline commercial powdered sodium silicate (Philadelphia Quartz G Brand).

"The dry mix as thus prepared may then have water added thereto to form the wet mix from which the mold is formed. After the wet plaster forming the mold has set, the mold is processed with steam under pressure in an autoclave to convert the calcium sulfate di-hydrate to calcium sulfate hemi-hydrate and to leave free water distributed throughout the mold. The mold is then removed from the autoclave and allowed to stand at room temperature for a number of hours whereby the hemi-hydrate is rehydrated to di-hydrate. The mold is then dried to remove practically all of the remaining free water from the plaster."

In the official statement made by an examiner (who was not the Primary Examiner) following the appeal to the board it is said:

"In the present application, the improvement consists of the use in the process of the Bean patent of a small amount of a silicate from the class consisting of sodium and potassium silicate for the purpose of controlling the setting expansion. There is no disclosure as to why it is desirable to control the expansion during setting or processing nor any disclosure as to how the expansion is controlled whether it is increased, decreased or merely maintained stable. The amount used is about 1% by weight of the silicate, and it is said that about 0.8% has given the best results."

The Neiman patent "relates to investment compositions for use in making refractory molds into [sic] which metals or alloys may be cast into objects which must conform to a predetermined size and shape."

The composition is asserted to have general application in industry, but the specification of the patent describes it in its use in dental casting work—which is a use named in the Morris Bean patent specification wherein it is said:

" * * * Thus, for example, in dental casting the size of the impression made in the mouth of the patient can be reproduced substantially perfectly by using a composition and a recrystallization treatment such that the expansion in the mold material after it is formed over the pattern is equal to the shrinkage of the metal from its casting temperature to the ordinary mouth temperature, or if a slight increase in size is desired in order to assure a tight fit or a slight decrease in size to allow for cement is required these can be achieved by a suitable adjustment of the recrystallization treatment."

In the specification "representative compositions" are given. Water and plaster of Paris are ingredients common to all the examples. In two silica is named and in three talc.

The process defined by Neiman does not include the dehydration and rehydration steps defined in the Morris Bean patent.

The following description is taken from the brief of the Solicitor for the Patent Office before us, page references to the record being deleted:

"In order to provide a mold cavity larger than the pattern from which it is made * * *, Neiman forms the mold from a composition of plaster of Paris, silica, and spodumene ($LiAlSi_2O_6$), with a small amount of specified salts, including 'sodium silicate,' as 'catalysts' * * *. The spodumene is said to expand and to increase the expansion of the mold compositions * *, and the 'catalysts' are said 'to enhance the mold expansion' * * *. The 'catalysts,' Neiman asserts * * *, 'will increase the expansion of * * * molds considerably' and will cause the mold 'to continue to expand, or prevent its shrinkage.' Thus, Neiman discloses, as the examiner stated * * *, 'the use of sodium silicate to control mold expansion although under somewhat different circumstances from those of applicant.' The use of sodium silicate by Neiman is to increase expansion, or prevent shrinkage."

It is regrettable, or at any rate confusing, that there is lack of harmony between the official statement made by the examiner who prepared it, following the appeal to the board, and the decision of the board itself.

In the decision of the board it is said:

" * * * There has been much argument between applicant and the Examiner as to the meaning of the word 'control', but in our opinion the propriety of the rejection of the claims does not depend primarily on the meaning given to that word, and we are willing, for present purposes, to acquiesce with applicant's contention that 'control' means to curb, check, or restrain."

As a matter of fact, the foregoing ruling of the board is not inharmonious with the decision of the particular Primary Examiner who passed upon the application up to and including final rejection of the claims. After the matter had been passed to another examiner for preparation of the official statement, however, argumentative matter was added, the relevancy of which is not clear to us.

In affirming the Primary Examiner's rejection of the appealed claims the board said:

"The claims which appellant is asking us to allow are limited to the presence of a small amount of alkali silicate in a plaster of Paris composition. The claims, however, are not limited to any definite ratio of $Na_2O$ to $SiO_2$ for the alkali silicate, nor do they exclude the presence of other ingredients besides plaster of Paris and alkali silicate. Whether the material will expand, contract, or remain constant in volume may depend on the presence or absence of other ingredients, not mentioned in the claims. The process therefore cannot be considered critical as far as the composition of the material is concerned, and since the dehydrating and rehydrating steps are disclosed in the Bean patent, we find nothing in the claims on which to predicate patentability. The material used by Neiman notwithstanding the presence of a small amount of alkali silicate, is still essentially a plaster of Paris, and is obviously of the same general type or character as the material used by Bean."

We are not convinced that the board erred.

The disposition of claim 10, rejected as drawn to a nonelected species, is not before us for decision.

The decision of the board is affirmed.

Affirmed.